IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KATHY CLARK, AMY ENDSLEY, SUSAN GRIMMETT, MARGUERIETTE SCHMOLL, AND KEVIN ULRICH, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | Civil Action No.  1:12-CV-00174-SS |
| CENTENE CORPORATION, CENTENE COMPANY OF TEXAS, L.P., AND SUPERIOR HEALTHPLAN, INC., | ) ) ) ) | |
| Defendants. | ) ) ) ) | |

PLAINTIFFS' MOTION TO COMPEL DISCOVERY, MOTION FOR SANCTIONS, AND MOTION TO EXTEND DISCOVERY DEADLINE AND DEADLINE TO FILE MOTION FOR CLASS CERTIFICATION

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES, named Plaintiffs on behalf of themselves and all others similarly situated and pursuant to Rule 37 of the Federal Rules of Civil Procedure moves this Court for an Order compelling discovery from Defendant Centene Corporation and in support of such Motion shows:

## I. BACKGROUND

On February 22, 2012, Plaintiffs commenced this collective action for unpaid overtime under the Fair Labor Standards Act.  29 U.S.C. §201, *et seq.* ("FLSA").   The named Plaintiffs brought this action on their own behalf and on behalf of all similarly

situated individuals, alleging that they and other current or former employees at Defendants' locations throughout the United States, who performed the same or substantially similar job duties in the three years preceding the filing of this lawsuit, were misclassified as exempt under the FLSA by Defendants and are owed overtime wages.

There are three named Defendants: 1) Centene Corporation, 2) Centene Company of Texas, L.P., and 3) Superior HealthPlan, Inc.  Centene Corporation is the parent company of the other two Defendants.  Plaintiffs allege these entities jointly employed Plaintiffs.  In the Original Joint Answer Centene Corporation admitted it was Plaintiffs' employer.  *See* Dkt. No. 8. Later, in the Amended Joint Answer, Centene Corporation denied employer status.  *See* Dkt. No. 19. However, evidence gathered and documents produced to date make clear that Centene Corporation was correct in its initial assessment and that it did, in fact, employ Plaintiffs.  Evidence also indicates that Centene Corporation is the employer, or joint employer, of individuals performing the same job duties at Centene Corporation's other subsidiaries and that these workers were misclassified as exempt from the overtime requirements of the FLSA. Additionally, evidence indicates Plaintiffs and these workers were together the victims of Centene Corporation's common decision, policy, or plan, resulting in FLSA violations.

On October 5, 2012, Plaintiffs served Defendant Centene Corporation with its Plaintiffs' Notice of Intention to take Videotaped Oral Depositions of Defendant Centene Corporation's Corporate Representative(s) pursuant to Fed. R. Civ. P. 30(b)(6). ("Notice").  *See* Exhibit 1.  The parties had previously conferred, negotiated and agreed upon the language of the twelve areas of inquiry.  *See* Exhibit 2.

The deposition was to be conducted at the offices of Defendants' counsel, which are located in Centene Plaza, the office tower which also houses the corporate headquarters of Centene Corporation. The person designated was Tricia Dinkelman, who identified herself as Vice President of Tax for Centene Management Co., another of Centene Corporation's subsidiaries. Ms. Dinkelman was first questioned regarding area of inquiry 12, the corporate of structure of Centene Corporation and its subsidiaries. She fully answered questions regarding Centene Corporation's organizational chart and acknowledged she actually created the chart. *See* Exhibit 3 at 7:4 – 13:21. However, when the questioning turned to the other eleven areas of inquiry Ms. Dinkelman provided no information. These areas deal largely with the existence of employees performing the same job duties as the named Plaintiffs at Centene Corporation's other subsidiaries and the involvement of Centene Corporation with the business and personnel policies of those subsidiaries. To these areas of inquiry, each of which was read verbatim to the witness (*See* Exhibit 4 at 38:13 – 52:5), her response was essentially that the information is not known to Centene Corporation "[b]ecause Centene Corporation doesn't have any employees and that level of information isn't known by the Board of Directors." *See* Exhibit 5 at 22: 12-14. This position was further defined in a colloquy between David G. Langenfeld, Plaintiffs' counsel, and Robert A. Kaiser, Defendants' counsel:

MR. KAISER:       Now, what Miss Dinkelman is going to testify to . . . is the level of knowledge that Centene Corporation would have about these questions.

MR. LANGENFELD: And I think she's going to sit there and tell me they don't have any employees so they don't have any information. Is that where we're headed?

MR. KAISER:        Well, Yes. (Mr. Kaiser then went on to reiterate that the information is not reported to the Board of Directors).  *See* Exhibit 6 at 24:5 – 13.

## II.   CENTENE CORPORATION DOES HAVE EMPLOYEES

The notion that Centene Corporation does not have employees is a fiction created by Centene Corporation's counsel after it filed its Original Answer in this case.  As stated above, Defendants' Original Answer admitted Centene Corporation was the employer of the named Plaintiffs.  This position is consistent with the evidence produced to date.

Thereafter, and apparently after further reflection and consideration of the consequences, Defendants filed an amended answer wherein, for the first time, they took the untenable position that Centene Corporation was not the employer of the named Plaintiffs.  In fact, Centene Corporation claims it has no employees at all.  This newfound position is a transparent attempt to limit certification to a local level and obstruct Plaintiffs' forthcoming request for certification of a national class.

For FLSA purposes, "[a]n '[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee.'"  *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012) (citing 29 U.S.C. § 203(d)).  The Fifth Circuit uses the "economic realities" test to determine employer status.   Under this test, the court considers four factors; to wit:  whether the entity (1) possessed the power to hire and fire the employees,  (2) supervised and controlled employee work schedules or conditions of employment,  (3) determined the rate and method of payment, and  (4)  maintained employment records.  *Id.* at 355.  When a parent corporation, along with the subsidiary, is alleged to be a joint employer, that another employee admitted the two entities were "one

in the same", and that an employee handbook existed bearing the name of both entities has been held sufficient to raise a fact issue with regard to whether the parent corporation occupies the status of employer for FLSA purposes. *Yaklin v. W-H Energy Servs., Inc.*, No. C-07-422, 2008 WL 4692419, at *8 (S.D.Tex. Oct.22, 2008). The evidence in *Yaklin* is dwarfed by the evidence establishing Centene Corporation is an employer in this case:

## A.      Centene Corporation Employee Handbook

Each named Plaintiff signed a form entitled "Employee Handbook Acknowledgment" wherein each acknowledged receipt of "Centene's Employee Handbook". *See* Exhibit 7.   The Employee Handbook is attached as Exhibit 8. Defendants attempt to explain that the reference to "Centene" is not to Centene Corporation, but rather to Centene Management Company, LLC, one of Centene Corporation's numerous subsidiaries, despite no reference to Centene Management Company in either document.   The inescapable fact is that Centene Corporation's trade inscription, or logo, is prominently displayed at the top of the acknowledgment form. Moreover, the first substantive section of the employee handbook is entitled "Company Mission, Values & Philosophy" and begins as follows: "At *Centene Corporation*, we are empowered by our shared corporate beliefs in our Mission, our Values and our Corporate Philosophy." *See* Exhibit 8, at 4 (emphasis added). It then continues, "[a]t Centene Corporation, we place high value on the following five core principles, which act as the foundation of our business operations.   These principles incorporate the pride *Centene employees* take in conducting business with the highest degree of service and integrity." *Id.* (emphasis added). This is an obvious and unmistakable reference to the employees of

Centene Corporation, employees which this Defendant continues to deny exist.  The handbook is replete with references to "employee(s)".

Not only does the Employee Handbook Acknowledgement establish the employer/employee relationship, it actually defines it.  "I further understand that the policies, practices, procedures, and benefits contained in the handbook do not constitute an employment contract between Centene and myself.  I understand that unless otherwise provided for by statute, that notwithstanding any of the provisions of this handbook, I am employed by Centene on an 'at- will' basis, by mutual consent and that no oral or written statements have been given to me contrary to the foregoing.  My employment may be terminated at any time either by me or Centene with or without cause."  Again, this document bears the Centene Corporation logo at the top of the page.  *See* Exhibit 7.

In addition to establishing Centene Corporation's ability to hire and fire, and to control the conditions of employment, the handbook also establishes that Centene Corporation maintained employment records.  "In compliance with federal regulations, personnel files, which include information relevant to employment for all employees of Centene and its subsidiary healthplans and businesses, are maintained and housed at the corporate office in the Human Resources Department."  *See* Exhibit 8, at 5.  Clearly, because of the reference to Centene and its subsidiaries, the reference to "Centene" is to the parent company, Centene Corporation.

**B.     Other Hiring Documents.**

During the hiring process, a host of other documents are utilized.  These

documents clearly display Centene Corporation's logo: (1) Application for Employment, *See* Exhibit 9;   (2) Personal Information Form, *See* Exhibit 10;   (3) Call Monitoring Acknowledgment, *See* Exhibit 11; and (4) Offer Letter (while this document does not bear the Centene Corporation logo, it clearly references Centene Corporation as the employer.) *See* Exhibit 12.

## C.   Other Employment Related Documents

(1) Payroll Change Notice- This document is used when there is a new hire, a termination, or any change in employment status and clearly displays the Centene Corporation logo at the top of the page. *See* Exhibit 13; (2) Performance Review- This document is used annually to evaluate employees. This document clearly displays the Centene Corporation logo at the top of the first page. *See* Exhibit 14;   (3) Separation Agreement and General Release- This document purports to be a release of claims by an employee at the termination of employment and specifically identifies Centene Corporation as an employer against whom claims are released. Upon signature, the document is returnable to Stephanie Hall, who is identified as Vice President of Human Resources for Centene Corporation.   *See* Exhibit 15;   (4) Job Descriptions- This document defines the job duties and FLSA status of utilization review nurses and clearly displays the Centene Corporation logo.   *See* Exhibit 16; and (5) 2010 Total Compensation Summary- This document is a summary of Plaintiff Susan Grimmett's compensation and benefits for the year 2010. The front cover bears the logo of Centene Corporation and the back cover shows the document is received from "Centene Corporation". *See* Exhibit 17.

**D.      Deposition of Esmeralda Cazares-Baig**

Ms. Cazares-Baig is Vice President of Utilization Management at Centene Company of Texas, L.P., Centene Corporation's local subsidiary and the location where the named Plaintiffs performed their work.  She was deposed in Austin, Texas, prior to counsels' travelling to St. Louis to depose the representative of Centene Corporation. She was asked about her involvement with internet social networking.  She acknowledged using the internet site "LinkedIn".  She claimed that another person compiled her profile information but admitted that she approved it.  When asked who she identified on her LinkedIn page as her employer, she replied "Centene Corporation".  *See* Exhibit 18 at 14:24 – 16:4.

Ms. Cazares-Baig was then questioned regarding her travels to St. Louis, Missouri.  She states she has travelled to the corporate offices approximately five times over the past five years.  When asked who "corporate" refers to, she answered Centene Corporation.  She further stated she attended management training conducted by Centene Management Company, thereby clearly acknowledging her understanding that Centene Corporation and Centene Management Company constitute separate entities.  *See* Exhibit 19 at 23:5 – 25:10.

**III.      INFORMATION REQUESTED IS REASONABLY AVAILABLE**

The areas of inquiry delineated in the Notice were designed to discover the existence of similarly situated employees at other Centene Corporation subsidiaries around the United States, and the degree to which Centene Corporation exercises control

over the employment practices of those subsidiaries.  Federal Rule of Civil Procedure 30(b)(6) requires Centene Corporation to designate a person who can testify about information known or reasonably available to the organization.  The Defendant "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to *prepare* those persons in order that they can answer fully, completely, unevasively, the questions posed ... as to the relevant subject matters". *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5thCir.2006)(emphasis in original).

Ms. Dinkelman's position that Centene Corporation has no employees and, therefore, she as the corporate representative would have no knowledge regarding the relevant areas of inquiry simply is not true.  Directly on point, Ms. Dinkelman testified that she, as the Centene Corporation Representative, would have no knowledge of whether other subsidiaries had workers performing jobs similar to those performed by the named Plaintiffs.  *See* Exhibit 20 at 54:16 – 56:5.  However, Plaintiffs previously propounded interrogatories upon Centene Corporation inquiring as to that very issue.  Initially, Defendant objected and refused to answer.  Plaintiffs filed their Motion to Compel (*See* Dkt. No. 27) at which time Defendant supplemented its answer identifying forty-three locations around the country where such individuals were employed.  Defendant later supplemented its answer again, to identify yet another such location, bringing the total to forty-four.  *See* Exhibit 21.  The verifications for both supplements were signed by none other than Tricia Dinkelman, the same person who now testifies that this very information is not within her knowledge as the representative of Centene Corporation.  *See* Exhibit 22. When asked why she was able to obtain that level of

information in providing answers to interrogatories, but not in providing deposition testimony, Ms. Dinkelman responded it is because she is now testifying as to Centene Corporation's knowledge. *See* Exhibit 23 at 56:24 – 59:5. Counsel then reminded her that the interrogatories she answered had been propounded to "Centene Corporation". In response, she replied "it would have taken an extensive amount of time for me to figure out who at each subsidiary had the answers to each one of your questions." *Id.* at 59:6 – 59:17. In so answering, Ms. Dinkelman seems to be shifting from the position that Centene Corporation cannot know the information, to an argument that it is too difficult to obtain the information. This, even though she also testified that she did not make a single telephone call to a single subsidiary to even attempt to gain the information. *See* Exhibit 4 at 52:2-4 and Exhibit 24 at 22:20 – 23:1.

It has been established that employees exist at Centene Corporation subsidiaries that perform the same or similar jobs as the named Plaintiffs. Therefore, the information requested is highly relevant and Ms. Dinkelman's testimony that she cannot (or will not) now do that which she has already done is particularly egregious. Furthermore, defense counsel's conduct in not objecting beforehand to the Notice or filing any motion in opposition thereto, but in allowing Plaintiffs' counsel to incur the cost and expense in travelling from Austin, Texas, to St. Louis, Missouri, knowing full well Defendant would tender a witness unable, or unwilling to answer the areas of inquiry is unconscionable. This is particularly so when defense counsel actually participated in the drafting of those areas of inquiry.

## IV. CONCLUSION

For the reasons set forth herein, Plaintiff would respectfully request this matter be set for an oral hearing and that thereafter this Court enter an Order Granting Plaintiffs' Motion to Compel Discovery, specifically the deposition testimony of a the person most knowledgeable at Centene Corporation of the subjects identified in Plaintiffs' Rule 30(b)(6) deposition notice, and, further, Plaintiffs request monetary sanctions for the reasonable attorney's fees in bringing this motion to compel and for the attorney's fees and expenses for attending the out-of-state deposition made the subject of this motion. Plaintiffs further request that the current deadlines to complete discovery (October 31, 2012) and to file certification motion (December 1, 2012) be extended in order that the deposition may be conducted.

Respectfully submitted,

BY: /s/ David G. Langenfeld
David Langenfeld
SBN: 11911325
DUNHAM & JONES, P.C.
1800 Guadalupe Street
Austin, Texas 78701
Tel: (512) 777-7777
Fax: (512) 499-0975
Email: david@dunhamlaw.com

ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF CONFERENCE

On October 24, 2012, counsel for Plaintiffs, David G. Langenfeld, conferred with counsel for Defendants, Robert A. Kaiser, about the filing of this Motion and on October 25, 2012 counsel for Plaintiffs, David G. Langenfeld conferred with counsel for Defendants, Robert A. Kaiser regarding the extension of the discovery deadline and the deadline to file a motion for conditional certification, and Defendants' counsel has not consented to this Motion.

/s/ David G. Langenfeld

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Michael J. Golden
BOULETTE & GOLDEN LLP
2801 Via Fortuna, Suite 530
Austin, Texas 78746

Mr. Jeremy M. Brenner
ARMSTRONG TEASDALE, LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, MO 63105

Mr. Robert A. Kaiser
ARMSTRONG TEASDALE, LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, MO 63105

Ms. Jovita M. Foster
ARMSTRONG TEASDALE, LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, MO 63105

ATTORNEYS FOR DEFENDANTS

and I hereby certify that a true and correct copy of the foregoing document was served on counsel of record for the Defendants, in the manner indicated, on October 29, 2012, as follows:

**VIA C.M.R.R.R:  No. 91 7199 9991 7030 0904 2674**

Mr. Michael J. Golden
BOULETTE & GOLDEN LLP

2801 Via Fortuna, Suite 530
Austin, Texas 78746
ATTORNEY FOR DEFENDANTS


**VIA C.M.R.R.R:  No. 91 7199 9991 7030 0900 7611**

Mr. Robert A. Kaiser
ARMSTRONG TEASDALE, LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, MO 63105

/s/ David G. Langenfeld