IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2013 FEB -1  PM 3: 30
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

KATHY CLARK, AMY ENDSLEY, SUSAN
GRIMMETT, MARGUERIETTE SCHMOLL,
and KEVIN ULRICH, on Behalf of Themselves
and All Others Similarly Situated,
                Plaintiffs,

-vs-

Case No. A-12-CA-174-SS

CENTENE CORPORATION; CENTENE
COMPANY OF TEXAS, L.P.; and SUPERIOR
HEALTHPLAN, INC.,
                Defendants.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Centene Corporation's Motion for Summary Judgment [#43], and Plaintiffs Kathy Clark, Amy Endsley, Susan Grimmett, Margueriette Schmoll, and Kevin Ulrich's Response [#49]; and Plaintiffs' Motion for Partial Summary Judgment [#44], and Defendant's Response [#48]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

This is a class action suit for unpaid overtime wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219. Plaintiffs are nurses who allege they were incorrectly classified as exempt from the FLSA's overtime provisions. Although the named Plaintiffs all work (or worked) in Austin, Texas, Plaintiffs ultimately seek to certify a nationwide class consisting of all similarly

situated nurses at Centene Corporation subsidiaries across the United States. The size of any prospective class turns on whether Centene Corporation employs Plaintiffs, and those similarly situated, or whether the employment relationship ends lower on the corporate ladder at some subsidiary company like Centene Company of Texas, L.P. (Centene Texas). This question—whether Centene Corporation is Plaintiffs' employer under the FLSA—is the subject of the cross-motions for summary judgment.

Naturally, the current centerpiece of the case is Centene Corporation and its intricate corporate web. Centene Corporation is the parent company of Defendants Centene Texas and Superior HealthPlan, Inc. The parties' dispute boils down to whether Centene Corporation and Centene Texas are "joint employers" of Plaintiffs, or whether Centene Texas is the sole employer.[1] But before the question at the heart of these motions can be answered, the Court must unravel the tangled web of corporate players operating under the Centene banner.

### A.     Centene Corporation

Centene Corporation sits atop the corporate pyramid as a holding company for eighty-six distinct subsidiaries. Def.'s Mot. Summ. J. [#43], Ex. F (Dinkelman Aff.) ¶ 2. Many of those subsidiaries incorporate the word "Centene" in their own names. The Centene name is used generically throughout the corporate structure to indicate general affiliation. *Id.*, Ex. J. (Hall Trans.) at 35:21–25.[2] Centene Corporation has no direct employees, and is run exclusively by the nine

---

[1] The parties dedicate few words to discussing Superior HealthPlan, and Plaintiffs represent they are not opposed to Superior HealthPlan's dismissal, as Centene Corporation and Centene Texas are the relevant entities. Pl.'s Mot. Partial Summ. J. [#44], at 11.

[2] Plaintiff Endsley testified she worked "at Centene," and used the names "Superior HealthPlan" and "Centene" interchangeably. Def.'s Mot. Summ. J. [#43], Ex. K (Endsley Trans.) at 37:3–6.

individuals serving on its Board of Directors. *Id.*, Ex. H (Dinkelman Trans.) at 19:11–14; Hall Trans. at 13:19–24.

Centene Corporation's board generally does not participate in any of the day-to-day activities of its subsidiaries. The board reviews "very high level information" about the performance of the subsidiaries in order to "fulfill its fiduciary responsibilities" to Centene Corporation shareholders. Dinkelman Trans. at 43:2–5. In short, Centene Corporation maintains its role is essentially one of financial management, and it does not involve itself in its subsidiaries' employment-related decisions such as hiring, firing, setting hours, or overseeing employees. Dinkelman Aff. ¶¶ 8–14.

**B.     Centene Company of Texas, L.P.**

Centene Texas is a Centene Corporation subsidiary, and an undisputed employer of most of the named Plaintiffs. *Id.* ¶ 4; Def.'s Mot. Summ. J. [#43], Exs. A–B (payroll registers and W-2 forms identifying Centene Texas as employer). The lone exception is Plaintiff Schmoll, who is technically employed by yet another subsidiary, Bankers Reserve Life Insurance Company of Wisconsin (Bankers Reserve). *Id.*, Exs. A–B. However, all the named Plaintiffs worked exclusively at a single location in Austin, Texas. *Id.*, App. [#43-2] ¶ 6.[3]

According to Plaintiffs' testimony, they applied for, interviewed with, and were hired by Centene Texas personnel in Austin. *Id.* ¶ 9. Although the hiring activities took place at Centene Texas's location in Austin, the employment application contains a "Centene Corporation" logo, and Plaintiffs received letters offering "employment with Centene Corporation." Pl.'s Mot. Partial Summ. J. [#44], Exs. 7–8. When Plaintiffs were disciplined or terminated, they interacted with

---

[3] Defendant's Appendix [#43-2] groups evidence from the various sources in the record (affidavits, deposition transcripts, etc.) into relevant paragraphs. Although the Court has reviewed the individual evidentiary citations, the Court will at times cite to the Appendix for simplicity.

human resources personnel at Centene Texas in Austin. Def.'s Mot. Summ. J. [#43], App. ¶ 9. If an employee was actually terminated, they would sign a broad separation agreement releasing "Centene Corporation" and its parents and subsidiaries from liability. Pl.'s Mot. Partial Summ. J. [#44], Ex. 3. Plaintiffs' contacts in human resources were employed by Centene Texas. Def.'s Mot. Summ. J. [#43], Ex. G (Ross Aff.) ¶¶ 4–6. Centene Texas's Vice President of Utilization Management, Esmeralda Cazares-Baig, testified the hiring process at Centene Texas is self-contained, involving no input from Centene Corporation or its directors. *Id.*, App. ¶ 10. While Centene Management Company (discussed in more detail below) advises Centene Texas on termination decisions, Centene Corporation is not involved. *Id.*

Beyond the hiring stage, Plaintiffs testified their daily interactions were with Centene Texas personnel in Austin. Centene Texas employees supervised Plaintiffs, communicated their work schedules, and trained them. *Id.* ¶¶ 19–20. For example, when Plaintiffs were asked to work on Saturdays, their immediate supervisors at Centene Texas in Austin gave the orders. *Id.* ¶ 19. When Plaintiffs had issues to address with human resources, they generally contacted Centene Texas employees in Austin. *Id.* ¶ 21. On two occasions Plaintiffs contacted human resources representatives at Centene Management Company, but were directed back to the Austin personnel. *Id.* Centene Texas also purchased and provided equipment for Plaintiffs to use, and created and changed Plaintiffs' technical job descriptions. *Id.* ¶¶ 23–24. Daily work assignments came from Centene Texas supervisors. *Id.* ¶ 25. Centene Texas supervisors also approved requests for time off, and approved Plaintiffs' time entries. *Id.*

Plaintiffs were typically paid by Centene Texas, as reflected on their W-2 forms. However, in 2010, Michael Neidorff, Chairman, President, and CEO of Centene Corporation, mailed a generic

letter (addressed "Dear Colleague") to all employees, including Plaintiffs, indicating the Board of Directors had authorized bonuses. Pl.'s Mot. Partial Summ. J. [#44], Ex. 14. These bonuses were paid in the same manner as regular wages, and were included on each employee's regular W-2 form. *Id.*

C.   **Centene Management Company, LLC**

Though not a party to this case, Centene Management Company is yet another Centene Corporation subsidiary. Centene Management Company is an in-house consulting service. Centene Management Company's "clients" are other Centene Corporation subsidiaries who enter into agreements with Centene Management Company and pay for various services. *Id.* ¶ 7. Centene Management Company produces standard form documents for its clients to use either as-provided or with alterations. *Id.* Centene Texas is a client of Centene Management Company, and their arrangement is governed by agreements negotiated by them, without any oversight or involvement from Centene Corporation. *Id.* ¶ 8.

D.   **The Employee Handbook**

Centene Management Company's most important responsibility for purposes of these motions is its creation of an employee handbook. Centene Management Company developed this employee handbook for its clients, and Plaintiffs received a version of the handbook from Centene Texas. *Id.* ¶ 14.

The handbook contains the standard fare one would expect to find in such a document, including descriptions of employment practices, behavioral policies, pay policies, disciplinary procedures, work schedules, benefits, and leave availability. *Id.*, Ex. D (Centene Handbook) at 2–3. These contents are referred to as "guidelines," and the handbook explicitly disclaims the creation of

any legal obligations or contract of employment. *Id.* at 1. The handbook opens with a mission statement from "Centene Corporation," and thereafter frequently refers simply to "Centene." *Id.* at 4. In some instances, however, the handbook does distinguish between entities, such as the "At-Will Employment" paragraph, which notes employment "with Centene" is at will, and "The Company has not and shall not enter into any contract of employment without the prior approval of the Board of Directors or the Chairman & CEO of Centene Corporation." *Id.* at 6. The handbook also calls for "The Supervisor of the position" to set work hours, based on the "needs of the department and Company." *Id.* at 17.

## Analysis

### I.     Summary Judgment—Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.    Application

The issue before the Court is whether Centene Corporation is Plaintiffs' "employer" under the FLSA. The statute defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). This definition is to be "liberally construed to effectuate Congress'[s] remedial intent." *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324,

329 (5th Cir. 1993). The ultimate determination of employer status is a question of law. *Id.; see also Castillo v. Givens*, 704 F.2d 181, 187 n.12 (5th Cir. 1983), *overruled on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988) (criticizing contrary authority within the Circuit).

"The Fifth Circuit uses the 'economic reality' test to evaluate whether there is an employer/employee relationship." *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012). The economic reality test looks to whether the alleged employer "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 355 (internal quotation marks omitted). When an employee alleges multiple or joint employers, the economic realities test must be applied "to each individual or entity alleged to be an employer and each must satisfy the four part test." *Id.* (internal quotation marks omitted). Finally, there is "a strong presumption that a parent corporation is not the employer of its subsidiary's employees." *Lusk v. FoxMeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997).[4]

---

[4] The parties dispute whether the "strong presumption" applies in FLSA cases. *Lusk*, like many of the cases it relies upon, involved claims under the Age Discrimination in Employment Act of 1967, and its "single employer" test. *Lusk*, 129 F.3d at 775, 777–78. However, the principles behind the presumption derive from the nature of the corporate form, not the particular statute. *Johnson v. Flowers Indus., Inc.*, 814 F.3d 978, 980 (5th Cir. 1987). The presumption has therefore been applied in a variety of employment cases, including FLSA cases. *See, e.g., Long v. BDP Int'l, Inc.*, No. H-12-1446, 2013 WL 245002, at *4 (S.D. Tex. Jan. 22, 2013) (FLSA overtime pay claim); *Prince v. MND Hospitality, Inc.*, No. H-08-2617, 2009 WL 2170042, at *5 (S.D. Tex. July 20, 2009) (same); *Colindres v. QuitFlex Mfg.*, 235 F.R.D. 347, 363 (S.D. Tex. 2006) (Title VII and § 1981 claims).

The parties do not dispute Centene Texas is Plaintiff's employer. Plaintiffs nevertheless allege Centene Corporation was a joint employer with Centene Texas.[5] Accordingly, this Court must apply the economic realities test to Centene Corporation. *See Gray*, 673 F.3d at 355.

## A.     Hiring and Firing of Employees

The first factor to assess in determining the economic reality of the relationship between Plaintiffs and Centene Corporation is whether Centene Corporation had the power to hire and fire employees like Plaintiffs. *See id.* After reviewing the evidence in the record, the Court concludes this factor tends to show Centene Corporation is not Plaintiffs' employer.

Although job openings are posted on a central Centene website and various forms used in the hiring process are emblazoned with a Centene Corporation logo and reference employment with Centene Corporation, the reality is the hiring process is exclusively contained within and managed by the subsidiary, in this case Centene Texas. Prospective Centene Texas employees fill out the forms (marked with the Centene Corporation logo) in the Austin office of Centene Texas, interview with Centene Texas personnel, and are hired (or not hired) by Centene Texas. Def.'s Mot. Summ. J. [#43], Ex. I (Cazarez-Baig Trans.) at 34–40. Plaintiffs all testified this basic process—interviewing with and being hired by Centene Texas personnel in Austin—was followed in their respective

---

[5] Plaintiffs repeatedly highlight Defendants' original Answer, in which Centene Corporation admitted it was Plaintiffs' employer. Answer [#8] ¶ 1.1. Several months later, Defendants filed an Amended Answer in which Centene Corporation denied employing Plaintiffs, though Centene Texas admitted employer status (except as to Schmoll). Am. Answer [#19] ¶ 1.1. The amendment came after the twenty-one day grace period and was not made with Plaintiffs' written consent or leave of court, thus clearly violating the federal rules. *See* FED. R. CIV. P. 15(a). But Plaintiffs offered no protest at the time, nor any now, other than to point out the change in position. The Court will therefore follow the general rule that an amended pleading "supersedes the pleading it modifies," and "the original pleading no longer performs any function in the case." 6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1476 (3d ed. 2012); *see also Proctor & Gamble Defense Corp. v. Bean*, 146 F.2d 598, 601 & n.7 (5th Cir. 1945).

situations. *Id.*, App. ¶ 9. Additionally, Centene Texas makes its hiring decisions, including whether to add new positions, without consulting Centene Corporation.[6] Cazarez-Baig Trans. at 34–36.

The story with respect to termination is much the same, with discipline and termination handled exclusively by Centene Texas personnel in Austin without consultation with Centene Corporation. Def.'s Mot. Summ. J. [#43], App. ¶ 9. Plaintiffs argue the separation agreement terminated employees are asked to sign indicates Centene Corporation is an employer because Centene Corporation is included in the broad release of liability. Pl.'s Mot. Partial Summ. J. [#44], Ex. 3. This release also includes in the collective "Employer" category all other Centene Corporation subsidiaries, and all employees of those subsidiaries. *Id.* The language of the release was undoubtedly drafted broadly to maximize the value of the release, but it does not indicate an employer–employee relationship. Surely Plaintiffs do not contend *every other Centene employee* was their employer, yet those individuals are included in the release. The same is true of the dozens of other Centene subsidiaries, even though those subsidiaries have had absolutely no dealings with Plaintiffs. The separation agreement does not show Centene Corporation had the power to hire or fire Centene Texas employees like Plaintiffs, nor is there any evidence in the record of Centene Corporation itself ever hiring or firing Plaintiffs or any other Centene Texas employee. *See Gray*, 673 F.3d at 355 & n.1 (employer status turns on "actual operational control from which a fact finder could infer power to hire and fire").

---

[6] Ms. Cazarez-Baig testified Centene Texas occasionally seeks approval from Centene Management Company before adding some new positions. Cazarez-Baig Trans. at 35–36. This is consistent with Centene Management Company's consultative role. Plaintiffs do not allege Centene Management Company is Plaintiffs employer.

2.  **Control over Schedules and Conditions of Employment**

The second factor to address is whether Centene Corporation supervised and controlled employee work schedules or conditions of employment. *Id.* at 355. After reviewing the evidence in the record, the Court concludes this factor tends to show Centene Corporation is not Plaintiffs' employer.

Plaintiffs' own testimony is the best evidence on this factor. Plaintiffs testified Centene Texas personnel in Austin communicated their work schedules, and local human resources representatives handled all complaints and issues. Def.'s Mot. Summ. J. [#43], App. ¶ 19. For example, Plaintiff Endsley testified her work hours were adjusted from 8:00 a.m. to 5:00 p.m. to 9:00 a.m. to 6:00 p.m., she was required to work Saturdays, and her lunch period was shortened. *Id.*, Ex. K (Endsley Trans.) at 117–20. All these changes were communicated in an e-mail from her supervisor at Centene Texas, and were also discussed in nurse meetings held by her supervisors at Centene Texas. *Id.* This consistent testimony indicates it was the personnel at Centene Texas in Austin, not the Board of Directors at Centene Corporation, controlling Plaintiffs' work schedules and employment conditions. Further support can be found in the testimony of Centene Texas employees like Ms. Cazares-Baig, who testified Plaintiffs' immediate supervisors at Centene Texas controlled Plaintiffs' workloads, set expectations, and approved hours worked and requests for leave. *Id.*, App. ¶ 25.

Plaintiffs point first to the employee handbook and its multitudes of policies as proof Centene Corporation controlled the conditions of their employment. The handbook specifies it is purely informational and only offers guidelines, and was also created by Centene Management Company in collaboration with Centene Texas, not Centene Corporation. Additionally, the handbook's guidelines in many ways confirm Centene Texas's local control. For example, the handbook sets

"normal hours of operation" as 8:00 a.m. to 5:00 p.m., but allows "[m]anagement" to modify those hours. Centene Handbook at 6. This is precisely what occurred, as Plaintiffs' individual supervisors at Centene Texas changed their work hours and reconfigured their schedules without input from Centene Corporation. Similarly, the handbook instructs non-exempt employees to not work overtime unless such work is "approved by your Supervisor in advance." *Id.* at 14. Without delving into the merits of Plaintiffs' case, to the extent they were asked to work additional hours (e.g., Saturdays), such requests came from Centene Texas supervisors, not Centene Corporation. Finally, the handbook notes "The Supervisor of the position determines specific, required hours," not Centene Corporation. *Id.* at 17. Plaintiffs offer no evidence the Board of Directors at Centene Corporation was actually calling the shots, micro-managing their work schedules from afar.

Plaintiffs also rely on various official job descriptions, containing a Centene Corporation logo, which define their job duties and classify them as exempt employees. Pl.'s Mot. Partial Summ. J. [#44], Ex. 12. Ms. Cazarez-Baig testified these job descriptions, including the FLSA exemption status decision, were created by Centene Texas human resources personnel in collaboration with Centene Management Company employees. Cazarez-Baig Trans. at 60–64. Plaintiffs offer no evidence to the contrary. Based on the record before the Court, Centene Corporation did not exercise control over Plaintiffs' work schedules or their conditions of employment. *See Reich*, 998 F.2d at 329 (holding nightclub consultant was an FLSA employer where, among other things, employees identified him as their supervisor and he personally gave employees specific work instructions).

3.  **Rate and Method of Payment**

The third factor to consider is whether Centene Corporation determined Plaintiffs' rate and method of payment. *Gray*, 673 F.3d at 355. After reviewing the evidence in the record, the Court concludes this factor tends to show Centene Corporation is not Plaintiffs' employer.

Plaintiffs' pay stubs and W-2 forms universally note the subsidiary, either Centene Texas or Bankers Reserve, employed Plaintiffs. Def.'s Mot. Summ. J. [#43], Exs. A–B. Ms. Cazarez-Baig testified Centene Texas human resources personnel provide Centene Texas supervisors with a range of salary options when interviewing potential employees, and the actual salary offered is determined by the supervisor. Cazarez-Baig Trans. at 36–37. The human resources personnel at Centene Texas may also get some guidance on compensation from Centene Management Company. *Id.* There is no evidence Centene Corporation sets, or even considers, the individual salaries or methods of payment. To the contrary, the evidence establishes Centene Corporation has no payroll function at all. *Id.*, App. ¶ 33.

Plaintiffs rely exclusively on Neidorff's authorization of bonuses as proof Centene Corporation controlled Plaintiffs' rate and method of pay. Pl.'s Mot. Partial Summ. J. [#44], Ex. 14. Although Plaintiffs argue the bonus payment "was co-mingled with wages ostensibly paid by its subsidiary Centene Texas," there is no evidence of co-mingled funds. Plaintiffs received the bonus from the same employer who provided their regular paychecks, and the bonus was included in wages paid by the same entity on their W-2 forms. Additionally, although Centene Corporation itself could authorize bonuses across the entire Centene pyramid based on Centene Corporation's financial goals, individual employee bonuses were determined at the local level, with the head of Centene Texas having ultimate control over Plaintiffs' bonus payments. Ross Aff. ¶ 7.

While the ability to authorize bonuses across all subsidiaries may demonstrate Centene Corporation has some ability to affect one aspect of Plaintiffs' compensation, this Court cannot extract employer-type control from this one-time occurrence. In *Gray*, the Fifth Circuit found an employer who occasionally signed employee's regular checks did not determine their rate or method of payment. 673 F.3d at 357. Here, Centene Corporation does not sign Plaintiffs' checks. Nor does it sign their bonuses. The *only* entities actually paying Plaintiffs, at rates set by those entities, are the subsidiary companies who employ them. Based on the record before the Court, Centene Corporation did not control Plaintiffs' rate or method of payment.

### 4.     Employment Records

The fourth factor to address is whether Centene Corporation maintained Plaintiffs' employment records. *Id.* at 355. After reviewing the evidence in the record, the Court concludes this factor tends to show Centene Corporation is not Plaintiffs' employer.

The evidence in the record demonstrates Centene Corportation does not maintain Plaintiffs' employment records. Def.'s Mot. Summ. J. [#43], App. ¶¶ 35–36. Plaintiffs rely exclusively on the handbook, which states "personnel files . . . are maintained and housed at the corporate office in the Human Resources Department." Centene Handbook at 5. The handbook does not clarify what "the corporate office" is, or where it is located. The undisputed testimony in the record, however, is that Centene Management Company maintains employment records for Plaintiffs. Hall Trans. at 61. The Court therefore finds Centene Corporation does not maintain Plaintiffs' employment records.[7]

---

[7] Alternatively, the Court finds Centene Corporation is not Plaintiffs' "employer" under the FLSA even if Centene Corporation maintains Plaintiffs' records in its offices. All other "economic reality" factors suggest Centene Corporation is not Plaintiffs' employer, and indicate Centene Corporation has virtually no control over Plaintiffs' actual employment.

Having considered the four "economic reality" test factors, the Court concludes Centene Corporation is not Plaintiffs' employer. Centene Corporation did not hire or fire Plaintiffs, did not set their work schedules or employment conditions, did not determine the rate or method of their payment, and did not maintain their employment records. Instead, those activities were handled by Centene Texas, Centene Management Company, or a combination of both. There is simply not enough evidence for this Court to conclude Centene Corporation was a joint employer under the FLSA, and the Court therefore GRANTS summary judgment in favor of Defendant Centene Corporation.

## Conclusion

Centene Texas has admitted it is Plaintiffs' employer, and the record supports this admission. The record does not support a finding of "joint employer" status by Centene Texas and Centene Corporation.

Accordingly,

IT IS ORDERED that Defendant Centene Corporation's Motion for Summary Judgment [#43] is GRANTED;

IT IS FURTHER ORDERED that Plaintiffs Kathy Clark, Amy Endsley, Susan Grimmett, Margueriette Schmoll, and Kevin Ulrich's Motion for Partial Summary Judgment [#44] is DENIED.

SIGNED this the _1st_ day of February 2013.

_/s/ Sam Sparks_
SAM SPARKS
UNITED STATES DISTRICT JUDGE