IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KATHY CLARK, AMY ENDSLEY, SUSAN GRIMMETT, MARGUERIETTE SCHMOLL, AND KEVIN ULRICH, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>    Plaintiffs,<br><br>v.<br><br>CENTENE COMPANY OF TEXAS, L.P., AND SUPERIOR HEALTHPLAN, INC.,<br><br>    Defendants. | Civil Action No. 1:12-CV-00174-SS |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' OPPOSED MOTION FOR CERTIFICATION AND NOTICE**

Defendant Centene Company of Texas, LP ("Centene Texas") states as follows for its Response to Plaintiffs' Opposed Motion for Certification and Notice:

**INTRODUCTION**

Plaintiffs Clark, Endsley, Grimmett, Schmoll, and Ulrich ("Plaintiffs") allege that they were misclassified as exempt from the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), because their specific, individual job duties do not qualify for exemption. Plaintiffs seek to recover unpaid overtime pay and certification of a class of purportedly similarly-situated employees, but offer no evidence to establish that they are similarly situated to those they wish to represent. Certification should be denied.

**ARGUMENT**

**I.   The *Lusardi* Approach to Certification of FLSA Collective Actions**

   **A.   *Lusardi*'s Two Step Method**

Courts in the Fifth Circuit apply the method identified in *Lusardi v. Xerox Corp.*, 118

F.R.D. 351 (D. N.J. 1987), when evaluating FLSA putative collective actions. *See, e.g., Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995) (overruled on other grounds by *Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003)). *Lusardi* collective actions typically have two stages of analysis. At the "conditional" stage, typically before discovery is conducted, the court is asked to decide simply whether notice to potential class members is proper based on limited evidence.[1] *Id.* If so, the court grants *conditional* certification of a representative class. *Id.* at 1214. At the second stage, the court makes a factual determination, with the benefit of discovery, about whether the claimants are in fact similarly situated to the prospective class. *Id.* If not, the court decertifies the conditional class.

### B.  The Second Stage Analysis is Applicable to Plaintiffs' Certification Motion

Plaintiffs do not seek *conditional* certification, but rather unconditional certification of a Texas state-wide collective action, which necessitates the fact-based analysis of the second *Lusardi* stage. Plaintiffs agree, and "would welcome an analysis conducted at the heightened standard." Pl.'s Motion, pg. 5 (emphasis added).[2]

### II. Certification and Notice Should be Denied Because Plaintiffs Have Failed to Establish That They Are Similarly Situated to The Proposed Class

At this stage, the principal inquiry is whether Plaintiffs are in fact similarly situated to the proposed class. *Harris v. Fee Transp. Servs., Inc.*, 2006 WL 1994586 at *3 (N.D. Tex. May 15, 2006 (emphasis added). Three established factors are considered: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant that appear to be individual to each plaintiff; and (3) fairness and procedural

---

[1] At the first stage, "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" that violates the law. *Mooney*, 54 F.3d at 1214, FN 8.

[2] Even if Plaintiffs sought conditional certification, the heightened standard is appropriate. The lawsuit is over a year old and the parties have conducted substantial discovery, including exchanging thousands of pages of documents, the depositions of all Plaintiffs, and three Rule 30(b)(6) depositions. *See, e.g., Valcho v. Dallas County Hosp. Dis.*, 574 F.Supp.2d 618 (N.D. Tex. 2008); *Odem v. Centex Homes*, No. 3:08-CV-1196-L, 2010 WL 424216 (N.D. Tex. Feb. 4, 2010); *Larsen v. Crème de la Crème, Inc.*, No. 4:09-CV-613, 2011 WL 335171 (E.D. Tex. Jan. 26, 2011).

considerations. *Id.* (citing *Mooney*, 54 F.3d at 1213, FN 7, and *Lusardi*, 118 F.R.D. at 359). "Plaintiffs bear the burden of establishing that they are similarly situated to the proposed class." *Basco v. Wal-Mart Stores, Inc.*, 2004 WL 1497709, *5 (E.D. La. July 2, 2004) (emphasis added).

Rather than meet this burden, Plaintiffs include in the class definition "nurses performing substantially similar job duties as Plaintiffs." Pl.'s Motion, pg. 10. Thus, despite their burden to do so, Plaintiffs have not even addressed, let alone established, the required factors. This falls far short of the relevant inquiry Plaintiffs ask the Court to apply: whether Plaintiffs are similarly situated to the proposed class. Plaintiffs' suggested class definition dispenses with any "similarly situated" analysis and creates a nonsensical inquiry: whether Plaintiffs are similarly situated to those to whom they are similarly situated. Without even the pretense of offering evidence as to who might be similarly situated, Plaintiffs have failed to meet their burden.[3] Thus, it is not necessary for the Court to even consider Centene Texas' evidence in order to deny Plaintiffs' Motion as a matter of law. Notwithstanding Plaintiffs' wholesale failure in this regard, Centene Texas offers compelling evidence that Plaintiffs are not similarly situated to the proposed class (or even to each other).

### A. Plaintiffs' Disparate Employment Situations Weigh Against Collective Treatment

This factor assesses differences between Plaintiffs and those they wish to represent in key aspects of employment, including job duties, geographic location, supervision, salary, department, tenure, employment history, and education. *See, e.g., Reyes v. Texas EZPawn, LP*, 2007 WL 101808 (S.D. Tex. Jan. 8, 2007); *Mooney*, 54 F.3d at 1214. The evidence establishes that Plaintiffs are totally dissimilar in these material aspects.

Plaintiffs all worked in Austin, but seek a class that includes employees, former and

---

[3] Plaintiffs cannot now be heard to complain that Centene Texas somehow thwarted their discovery efforts with respect to prospective class members. *See Larsen*, 2011 WL 335171 at *4.

present, at all other Centene Texas offices throughout the state of Texas and includes a time period when no Plaintiff worked for Centene Texas. Plaintiffs have no knowledge about other offices, other nurses, other jobs, others' job duties, or others' hours of work. *App. 1*. For example, Plaintiff Grimmett testified, "I didn't pay that much attention as to who was coming in what time . . . I didn't have time to mind everybody else's business . . . I was in my—I was typing; looking at my computer. I wasn't minding what [other nurses] were doing . . . I don't know what [other nurses] did." *Id.* In actuality, nurses in these other locations have (or had) different supervisors, different workloads, different types of work, and different work schedules. *App. 2*. Moreover, the last time any Plaintiff worked for Centene Texas was March 2012, and accordingly, none of the Plaintiffs have knowledge of any relevant terms of employment for anyone employed since that date, let alone that they are "similarly situated" to those individuals. Inclusion of other people and distant offices, even within one state, involves numerous additional individual material factual differences that are not insignificant. *Johnson v. TGF Precision Haircutters, Inc.*, 2005 WL 1994286, *2 (S.D. Tex. Aug. 17, 2005).

Plaintiffs themselves differ in level and amount of education, work experience, and even <u>type of nursing license</u>. Plaintiff Clark is a Registered Nurse, while all other Plaintiffs are Licensed Vocational Nurses. *App. 3*. Only Plaintiffs Clark and Grimmett have bachelor's degrees. *Id.* Plaintiff Schmoll has been licensed in Texas since 1973, while Plaintiff Ulrich has only been licensed since 2003. *Id.* Plaintiffs also all have different amounts of clinical nursing experience. *Id.* These material differences go right to the heart of any claim that Plaintiffs are improperly classified as exempt under the FLSA, which necessitates an individualized inquiry into the job duties and credentials of the employee. *See, e.g., Harris*, 2006 WL 1994586.[4]

---

[4] *See also Reich v. Homier Distrib. Co., Inc.*, 362 F.Supp.2d 1009, 1013 (N.D. Ind. 2005); *Aguirre v. SBC Commc'ns, Inc.*, 2006 WL 964554, *7 (S.D. Tex. April 11, 2006); *Morisky v. Pub. Serv. and Gas Co.*, 111 F.Supp.2d 493, 498-99 (D. N.J. 2000).

The extent to which Plaintiffs' used "pre-determined criteria and guidelines" is so pivotal to Plaintiffs' claim that they incorporate that fact into their class definition: individuals "whose job duties included applying pre-determined criteria and guidelines to a patient's medical data . . ." Pl.'s Motion, pg. 10. But even as to this fact, Plaintiffs are hardly similarly situated. Plaintiffs testified that they differed in which guidelines they used and how they applied those guidelines. *App. 4.* For example, in describing the order in which various guidelines were to be used, Plaintiff Clark said she was told to "start with the policy and procedures from Centene first and then InterQual and then TMHP," while Plaintiff Ulrich said "there were written instructions that for a certain kind of request you would use TMHP or for a certain kind of request you would use InterQual." *Id.* Plaintiff Schmoll testified that "[m]ost of the time [she] used TMHP guidelines," and that she "never used InterQual for home health." *Id.* Plaintiff Endsley stated that she did not use InterQual at all until late in her employment, and Plaintiff Schmoll said she never used Centene's guidelines. *Id.*

Additionally, Plaintiff Schmoll worked exclusively with foster care (and applied those guidelines); others did not handle foster care.[5] *App. 5.* Plaintiff Ulrich was principally assigned work from a healthcare plan called "CHIP," while Plaintiff Endsley was principally assigned work from one specific provider. *App. 5.* Some Plaintiffs were supervised by different managers. *App. 6.* Plaintiffs had different job titles and official job descriptions. *App. 7.* Plaintiffs even describe their own jobs differently, from why a nursing license was required to the amount of time they spent on the phone each day. *App. 8.*

With respect to the "overtime" alleged, there is not one representative story. Some Plaintiffs say they arrived early, others say they stayed late. *App. 10.* Some say they worked on

---

[5] Plaintiff Schmoll also worked for Banker's Reserve Life Insurance Company of Wisconsin, while all other Plaintiffs worked for Centene Texas. *App. 9.*

Saturdays, others did not. *App. 11*. Some say they worked at home with a laptop, others did not work at home. *App. 12*. Some say they worked through lunch, others always took a lunch. *App. 13*. Depending upon their supervisor, some Plaintiffs allege they attended nurse meetings during the work day, others met after hours. *App. 14*. Plaintiffs allege as few as three hours of overtime per week and as many as 18 hours. *App. 15*. In short, Plaintiffs' experiences are so varied even amongst themselves that they cannot be considered "similarly situated" to each other, let alone unidentified individuals.

In *Reyes*, as in the instant case, plaintiffs alleged they were similarly situated because they spent the majority of their time performing standardized, non-exempt tasks. *Reyes*, 2007 WL 101808 at *2. The court held, however, that the plaintiffs' deposition testimony revealed significant differences in their job duties, and that <u>a common job title among the plaintiffs, and even the fact that they may have spent the majority of their time performing non-exempt tasks, "does not establish sufficient similarities to warrant class certification</u>." *Id.* (emphasis added). The court reasoned that, "[a]lthough the [plaintiffs] held the same job title, this fact alone does not necessarily mean they performed the same work." *Id.* at *4.[6] Ultimately, the court found that "other than the global allegations . . . that the FLSA was violated, that they [all had the same job title for the defendant] at one point, and that they primarily performed non-exempt work, there [was] no real commonality among the Plaintiffs in their actual day to day job duties." *Id.*

In *Harris*, where the plaintiffs alleged they were similarly situated despite different job titles and job responsibilities, the court found "little similarity between the plaintiffs other than the fact that they all worked for the same employer and all claim violations of the FLSA." *Harris*, 2006 WL 1994586 at *3. Similarly, the evidence here is that Plaintiffs have little in

---

[6] *See also Morisky*, 111 F.Supp.2d at 498, and *Aguirre*, 2006 WL 964554 at *7.

common with each other. Plaintiffs are not similarly situated, and certification should be denied.

### B.  Centene Texas Raises Defenses That Are Individual to Various Plaintiffs

This factor assesses "whether the potential defenses pertain to the opt-in class as a whole or whether many different defenses will be raised with respect to each individual plaintiff." *Reyes*, 2007 WL 101808 at *5. "Because individualized defenses prevent an efficient proceeding with a representative class, several courts have granted motions for decertification on this basis." *Id.* Centene Texas' defenses require individual analysis, making collective treatment inefficient.

#### 1.  Applicability of Exemptions Requires Individual Analysis

"[W]hat [P]laintiffs are really challenging here is [the] determination that they are exempt under the FLSA." *Morisky*, 111 F.Supp.2d at 498. In its defense, Centene Texas has asserted the professional exemption, the administrative exemption, or a combination of both exemptions depending on the Plaintiffs' individual circumstances. Each Plaintiff may fit under one or more exemption. This is especially true because Plaintiffs are nurses, and Registered Nurses (RN) generally qualify for the professional exemption.[7] 29 C.F.R. § 541.301(e)(2). Still, whether or not each Plaintiff actually qualifies for an exemption requires individual analysis. The exemption defense weighs heavily against collective treatment, and courts "refuse to certify a class, even conditionally, when determining whether the employer improperly treated the plaintiffs as nonexempt would require a highly individualized, fact-intensive inquiry." *Aguirre*, 2006 WL 964554 at *7.

"The exempt or non-exempt status of any particular employee must be determined on the basis of whether his duties, responsibilities, and salary meet all the requirements of the appropriate exemptions criteria." *Reyes*, 2007 WL 101808 at *5. "The relevant statutory

---

[7] Plaintiff Clark is an RN, as are many other nurses at Centene Texas, while Plaintiffs Ulrich, Endsley, Grimmett, and Schmoll are licensed vocational nurses (LVN). *App. 16.*

exemption criteria will require an individual, fact-specific analysis of each [plaintiff's] job responsibilities." *Id.* "Determining whether an employee's duty is administrative," for example, "is extremely individual and fact-intensive, requiring a detailed analysis of the time spent performing administrative duties and a careful factual analysis of the full range of the employee's job duties and responsibilities." *Morisky*, 111 F.Supp.2d at 499. Further, "while some Plaintiffs may fall squarely within an exemption . . . , [Centene Texas] may have to use employment records and/or other contradictory witness testimony to rebut some of the Plaintiffs' allegations that they" do not fall within any exemption. *Reyes*, 2007 WL 101808 at *5. "<u>The individual nature of the inquiry required make[s] collective treatment improper</u>." *Morisky*, 111 F.Supp.2d at 499 (emphasis added).

### 2. Disciplinary Histories Are Unique to Each Individual

Several Plaintiffs were subject to discipline for attendance. *App. 17*. As in *Reyes*, these individualized facts negate Plaintiffs' claims that they worked overtime.[8] *See Reyes*, 2007 WL 101808 at *5. "These defenses require individualized evidence, making it difficult for [Centene Texas] to defend all of Plaintiffs' claims with generalized proof." *Id.*

### 3. The Statute of Limitations Bars Individual Claims Differently

Timeliness of the claim is also unique to each individual. Plaintiffs filed this lawsuit on February 22, 2012. Under 29 U.S.C. § 255(a), claims older than February 22, 2010 are likely untimely for Plaintiffs.[9] Moreover, the statute of limitations for claims of putative class members who have not opted in continues to run. 29 USC § 256(b). Consequently, the period of time for which some putative plaintiffs may have claims will not overlap with the period of time for

---

[8] Centene Texas will also assert widely differing attendance records, varied use of paid time off, Plaintiff Ulrich's unpaid suspension, and Plaintiff Clark's time spent not working while at work in defense of Plaintiffs' claimed entitlement to overtime compensation. *App. 18.*

[9] Absent a determination of willfulness, for example, all of Plaintiff Schmoll's claims are time barred.

8

which the named Plaintiffs may have claims.

### C. Fairness and Procedural Considerations Weigh Against Collective Treatment

The final factor requires consideration of "the primary objectives of the FLSA § 216(b) collective action: (1) to lower costs to the plaintiffs through the pooling of resources, and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arise from the same alleged activity." *Reyes*, 2007 WL 101808 at *6.[10] "The court must also consider whether it can coherently manage the class in a manner that will not prejudice any party or be particularly burdensome on a jury." *Id.* Like the factual differences and individualized defenses, fairness and procedural considerations also weigh heavily against certifying this class.

Litigating this case would be anything but efficient, as "the individual analysis each Plaintiff's claim will require," and "the judicial inefficiency of having essentially [a number of] mini-trials clearly outweighs any potential benefits in proceeding as a collective action." *Reyes*, 2007 WL 101808 at *6. "The Plaintiffs' claims are not amenable to generalized evidence and the Court would not be able to coherently manage the class without potentially prejudicing the parties." *Id.* <u>The proof required to establish the individualized exemption defenses alone would become the overwhelming focus of a trial,</u> which would amount to trials of many individual cases. *Johnson*, 2005 WL 1994286 at *6. The differences among the Plaintiffs and individualized, highly fact-intensive defenses, "would not only dominate but would swallow and consume the entire case."[11] *Reyes*, 2007 WL 101808 at *6; *Johnson*, 2005 WL 1994286 at *7.

### III. If the Court Grants Certification, Plaintiffs' Requested Notice is Improper

In the alternative, if the Court is inclined to grant certification, Centene Texas objects to Plaintiffs' proposed class definition, as well as Plaintiffs' proposed logistics pertaining to notice.

---

[10] Citing *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

[11] Moreover, individualized damage assessments, necessary because Plaintiffs have no evidence of hours worked by other nurses, would also militate against a collective action. *See Comcast Corp. v. Behrend*, 2013 WL 1222646 (U.S. Mar. 27, 2013).

### A. Plaintiffs' Proposed Definition of the Class is Circular

Plaintiffs attempt to put off the dispute over who is "similarly situated" by embedding that dispute in the proposed class definition. However as Plaintiffs' job duties varied significantly and are themselves in dispute, this proposed class definition is totally circular. In fact, "the scope of the class is dependent upon the answer to the question that is at the heart of this case—which employees are properly classified as exempt?" *Morisky*, 111 F.Supp.2d at 499. "[T]he proposed class consists of a group of individuals with different jobs and different job responsibilities who believe they have been improperly classified as exempt and denied overtime wages." *Id.* Thus, "Plaintiffs are seeking to have this Court certify a class based upon their own belief as to which employees do not satisfy any of the exemption criteria—the very issue to be litigated in this action." *Id.* This is despite Plaintiffs' total lack of evidence about other prospective class members' jobs. If the Court certifies a prospective class, it should be limited to Plaintiffs' exact job titles only.

### B. Plaintiffs' Requested Opt-in Period Will Unnecessarily Delay the Litigation

Plaintiffs seek a 120-day opt-in period, but give no explanation for why such a lengthy period is required. Pl.'s Motion, pg. 10. Plaintiffs have had more than one year to find opt-in plaintiffs, and Plaintiffs' counsel has already solicited additional plaintiffs. *App. 19.* Providing Plaintiffs an additional four months' time will only further delay this already protracted litigation. An additional opt-in period of 45 days is sufficient.

### C. Notice Should be Provided by U.S. Mail Only

Centene Texas requests that the Court follow typical procedures and allow notice to putative class members by approved mailing only. Plaintiffs' request for telephone notice flies directly in the face of court-supervised and approved notice, the purpose of which is to ensure that potential class members are not misled as to the nature of the claims and are given a neutral

description of the litigation that serves as notice rather than not marketing, and to avoid overreaching by Plaintiffs' counsel in the form of solicitation of potential opt-ins.

Respectfully Submitted,

BY:     */s/ Michael J. Golden*
       Michael J. Golden
       State Bar No. 24032234

       BOULETTE & GOLDEN LLP
       2801 Via Fortuna, Suite 530
       Austin, TX 78746
       512.732.8902
       512.732.8905 (facsimile)
       mike@boulettegolden.com

       Robert A. Kaiser
       Jovita M. Foster
       Jeremy M. Brenner
       ARMSTRONG TEASDALE LLP
       7700 Forsyth Blvd., Suite 1800
       St. Louis, Missouri 63105
       314.621.5070
       314.621.5065 (facsimile)
       rkaiser@armstrongteasdale.com
       jfoster@armstrongteasdale.com
       jbrenner@armstrongteasdale.com

       ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the above and foregoing has been served upon all counsel of record via the Court's ECF system on this 12th day of April 2013, as follows:

David G. Langenfeld
Dunham & Jones, P.C.
1800 Guadalupe Street
Austin, Texas 78701
512.777.7777 (Telephone)
512.340.4051 (Facsimile)

       */s/ Michael J. Golden*
       Michael J. Golden
       Counsel for Defendants