IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

KATHY CLARK, AMY ENDSLEY, SUSAN
GRIMMETT, MARGUERIETTE SCHMOLL,
and KEVIN ULRICH, on Behalf of Themselves
and All Others Similarly Situated,
                       Plaintiffs,

-vs-                                               Case No. A-12-CA-174-SS

CENTENE CORPORATION; CENTENE
COMPANY OF TEXAS, L.P.; and SUPERIOR
HEALTHPLAN, INC.,
                       Defendants.

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiffs Kathy Clark, Amy Endsley, Susan Grimmett, Margueriette Schmoll, and Kevin Ulrich's Motion for Class Certification and Notice [#54], Defendant Centene Company of Texas, L.P. (Centene Texas)'s Response [#60], and Plaintiffs' Reply [#61]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

This is a putative collective action seeking to recover unpaid overtime wages under the Fair Labor Standards Act (FLSA). Plaintiffs are nurses—both Licensed Vocational Nurses and Registered Nurses—who were employed in the Austin office of Centene Texas. Though their specific job titles varied, Plaintiffs generally performed "utilization review," a process involving the review of requests



for services from healthcare providers. Plaintiffs would apply certain predetermined guidelines and criteria to those requests. If the criteria were met, Plaintiffs would approve the requests for medical benefits; if the criteria were not met, Plaintiffs would forward the information to a physician for a final determination.

> Plaintiffs now seek certification of the following class:
>
> All current and former nurses performing substantially similar job duties as Plaintiffs who worked for Defendant at any Centene Company of Texas, L.P. (Superior Health Plan) location throughout the State of Texas since February 22, 2009, who were classified as exempt and not paid overtime compensation at a rate of time and a half for hours they worked over forty hours in a workweek, and whose job duties included applying pre-determined criteria and guidelines to a patient's medical data in response to requests by medical providers for the authorization of services.

Pl.'s Mot. Cert. [#54-2] at 10. Plaintiffs also wish to post Notice and Consent forms in the relevant Centene Texas offices, and request from Defendants a list of all putative class members' names, addresses, telephone numbers, and dates of employment. Centene Texas is opposed to the certification of any class, and objects specifically to Plaintiffs' proposed class.

## Analysis

I.  **Class Certification—Legal Standard**

The Fifth Circuit "has never set a legal standard for collective-action certification." *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 226 (5th Cir. 2011) (unpublished) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)). There are two general approaches to the collective-action certification process. *Mooney*, 54 F.3d at 1213.

The first approach, based on *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), uses a "two-step" analysis. *Id.* at 1213–14. The first step—the "notice stage"—tasks the trial court with

determining whether conditional notice should be provided to potential class members based on the "minimal evidence" usually in the record at the early stages of litigation, such as the pleadings and supporting affidavits. *Id.* Because evidence is scarce, the standard is "fairly lenient," and basically requires "'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan'" that violated the FLSA. *Id.* at 1214 & n.8 (quoting *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)). The second step—the "decertification stage"—occurs "after discovery is largely complete and the matter is ready for trial." *Id.* at 1214. Using the more developed factual record, the trial court determines whether the opt-in plaintiffs are similarly situated to the named plaintiffs and, if so, allows the case to proceed to trial. *Id.* If the court finds the opt-in plaintiffs are not similarly situated, those plaintiffs are dismissed without prejudice and only the named plaintiffs proceed to trial. *Id.*

The second approach, based on *Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990), is known as the "spurious class action" approach. *Id.* This method applies the class action standards from Federal Rule of Civil Procedure 23, looking at factors such as numerosity, commonality, typicality, and adequacy of representation. *Id.* Potential class members who choose not to opt in to the case are not bound by its results. *Id.*

## II.    Application

### A.    Choosing the *Lusardi* Standard

Courts in the Fifth Circuit, including this Court, have previously followed the *Lusardi* two-step approach. *E.g., Scherrer v. S.J.G. Corp.*, No. A-08-CA-190-SS, 2008 WL 7003809 (W.D. Tex. Oct. 10, 2008). The parties in this case agree the *Lusardi* approach is preferable to the spurious class action model. The parties differ, however, as to which stage of the *Lusardi* process this case is in.

Plaintiffs suggest the case should be analyzed under the lenient standard of the notice stage, in spite of the pre-certification discovery engaged in by the parties. Centene Texas counters that same discovery justifies applying the more fact-intensive analysis of the decertification stage.[1]

This case's present posture does not fit neatly in either of the *Lusardi* stages. On one hand, this case has been pending since February 2012, and the limited pre-certification discovery engaged in by the parties means the Court need not rely solely on Plaintiffs' pleadings. On the other hand, discovery is far from complete, and Centene Texas has at times used the pre-certification status of this case as a defense to providing some information during the discovery process. *See, e.g.*, Pl.'s Mot. Cert. [#54-13], Ex. 11 (Centene Texas objecting to providing information on similarly situated employees via interrogatory, noting "[n]o class has been certified in this case at this time and Plaintiffs' efforts to use this discovery as a method to discover other possible plaintiffs is improper at this stage of the litigation").

The Court concludes the more lenient of the two *Lusardi* standards is appropriate here, with a view towards conditionally certifying a class and allowing the parties to litigate decertification at a later date once discovery has been completed. Similar strategies have been followed in other cases in which some amount of pre-certification discovery was conducted, but the record was not fully developed. *See Gandhi v. Dell Inc.*, No. A-08-CA-248 JRN, 2009 WL 1940144, at *5 (W.D. Tex. July 2, 2009), *report and recommendation adopted*, No. A-08-CA-248 JRN, slip op. at 1–3 (W.D. Tex. Aug. 4, 2009) (Docket Entry #110). As in *Gandhi*, however, "the Court will not ignore the information before it," and will consider the evidentiary materials provided by the parties. *Id.*

---

[1] Centene Texas's position is no doubt encouraged by Plaintiffs themselves, who "would welcome an analysis conducted at the heightened standard," even though "the lenient standard is more appropriate at this stage." Pl.'s Mot. Cert. [#54-2] at 5.

B.  *Lusardi* Notice-Stage Analysis

At the notice stage, Plaintiffs "must make a minimal showing that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff[s] in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt in to the lawsuit." *Prater v. Commerce Equities Mgmt. Co.*, No. H-07-2349, 2007 WL 4146714, at *4 (S.D. Tex. Nov. 19, 2007). Based on Plaintiffs' allegations and the discovery materials produced to date, the Court concludes Plaintiffs have made such a showing.

First, there is a reasonable basis for believing both that other potential class members exist and want to opt in to this suit. In fact, the parties agree "there are putative class members who would want to join" this suit. Pl.'s Mot. Cert. [#54-11], Ex. 9 (email correspondence between counsel), at 2. Discovery has also revealed Centene Texas believes there are employees who performed either Plaintiffs' exact jobs or "jobs with substantially similar job duties" and who were classified as exempt in seven other Centene Texas offices across the state of Texas. *Id.* [#54-13], Ex. 11, at 3.

The real dispute is whether these other employees are similarly situated to Plaintiffs. There are obvious differences, even among Plaintiffs themselves, and Centene is quick to point these out. For example, although all the named Plaintiffs are nurses, they are both Licensed Vocational Nurses and Registered Nurses. Putative class members would obviously work in different offices in different cities across the state of Texas, and may have different salaries, employment histories, and levels of education. *See Reyes v. Tex. Ezpawn, L.P.*, No. V-03-128, 2007 WL 101808, at *2 (S.D. Tex. Jan. 8, 2007) (analyzing such factors at the decertification stage). The employees undoubtedly had different workloads, worked different numbers of hours, and may have even applied varying

guidelines, or at least applied the same set of guidelines in different orders. Centene Texas thus contends the ultimate classification of employees as exempt requires individual analysis and makes class certification inappropriate.[2]

The Court is unpersuaded these potential differences preclude the conditional certification of a collective action in this case. It would be a truly remarkable unpaid-overtime case in which every employee worked identical hours performing identical tasks. "Some day-to-day variation in how and when the [employees] performed these tasks does not preclude conditional certification and the issuance of notice." *Prater*, 2007 WL 4146714, at *6; *see also Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 106 (D. Conn. 2007) ("The court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated."); *Berger v. Cleveland Clinic Found.*, No. 1:05 CV 1508, 2007 WL 2902907, at *20 (N.D. Ohio Sept. 29, 2007) ("[E]ven at the decertification stage, similarly situated does not mean identically situated.") (internal quotation marks omitted).

Since the filing of this lawsuit, Centene Texas admits to having hired "approximately 105 Nurses in Utilization Management." Pl.'s Mot. Cert. [#54-14], Ex. 12, at 4. Thus, even though Centene Texas denies the existence of the job title "Utilization Review Nurse," there are likely some number of nurses employed by Centene Texas who performed, to some degree, the general task of authorizing coverage based on the application of predetermined guidelines to patient data. Some of those nurses may have performed jobs too distinct from Plaintiffs to ultimately proceed to trial

---

[2] But as Centene Texas admitted in discovery, "no one decided specifically to classify Plaintiffs as exempt, but rather . . . the decision was made on a job classification basis." Pl.'s Mot. Cert. [#54-13], Ex. 11, at 6. It is thus at least unclear whether Centene Texas itself employed such an individualized analysis in making the exemption determination, or whether Centene Texas exempted all employees in particular "exempt" job titles regardless of individual variances among the employees.

alongside them. This possibility is precisely why the *Lusardi* certification process is two stages, so the parties, after the notice stage, may determine who the actual class plaintiffs are and collect evidence proving those class plaintiffs are (or are not) similarly situated to the named plaintiffs. *See Reyes*, 2007 WL 101808, at *2–*7 (decertifying class of forty-two plaintiffs because post-discovery evidence revealed the plaintiffs were not similarly situated).

C.   **Crafting the Notice**

Centene Texas objects to Plaintiffs' proposed notice for a number of reasons. First, Centene Texas takes issue with the embedding of the "similarly situated" language in the notice itself, and requests the notice be limited to individuals with Plaintiffs' exact job titles. Second, Centene Texas contends a forty-five day opt-in period is sufficient, rather than the 120-day period requested by Plaintiffs. Third, Centene Texas argues notice should be given by approved mailing, not by telephone.

Centene Texas's first objection has some merit. The ultimate certification of a class will hinge on a determination, at the decertification stage, whether the opted-in plaintiffs are similarly situated to the named Plaintiffs. It is therefore somewhat circular to tie the notice to those who are "similarly situated." In any event, this Court does not believe a notice so worded could function as some sort of backstop against a later determination of unsimilarity simply because a putative class member received the notice. The Court will therefore alter the proposed language and limit the notice to individuals who shared the named Plaintiffs' job titles and those individuals Centene Texas has self-identified as nurses working in "utilization management."[3]

---

[3] Of course, the Court does not conclude an employee is de facto "similarly situated" simply because he or she is a nurse working in utilization management, and relevant facts disproving such similarity may be raised at the decertification stage.

Turning to Centene Texas's second objection, Plaintiffs do not attempt to explain why the 120-day opt-in period is necessary. Centene Texas correctly notes this case has already been pending more than one year, and, with Centene Texas's help, identification of the relevant employees should be a fairly easy task. The Court will therefore limit the opt-in period to sixty days, beginning after a fifteen-day period in which Defendants shall collect the names and last known mailing addresses for the potential class members and furnish them to Plaintiffs' counsel. Finally, the Court agrees with Centene Texas on the form of the notice, and concludes notices by posting and by mail are sufficient to inform potential class members of this lawsuit and their ability to opt-in if they wish.

## Conclusion

Accordingly,

IT IS ORDERED that Plaintiffs Kathy Clark, Amy Endsley, Susan Grimmett, Margueriette Schmoll, and Kevin Ulrich's Motion for Class Certification and Notice [#54] is GRANTED AS MODIFIED in this opinion;

IT IS FURTHER ORDERED that the class is defined as follows:

> All current and former nurses in job titles "Case Manager/Pre Certification," "Case Manager/Prior Authorization," and nurses working in "utilization management," who worked for Defendant at any Centene Company of Texas, L.P. (Superior Health Plan) location throughout the State of Texas since February 22, 2009, who were classified as exempt and not paid overtime compensation at a rate of time and a half for hours they worked over forty hours in a workweek, and whose job duties included applying pre-determined criteria and guidelines to a patient's medical data in response to requests by medical providers for the authorization of services.

IT IS FURTHER ORDERED that Defendants shall provide Plaintiffs with a list of all potential class members based on this order and the above description, including the

individuals' names, last known mailing addresses, and dates of employment, within FIFTEEN DAYS of entry of this order;

IT IS FURTHER ORDERED that Plaintiffs may mail Notice and Consent Forms, modified to comply with all terms of this order, including the modified class description, to all persons identified by Defendants who may fall within the definition of the class;

IT IS FURTHER ORDERED that Defendant shall post the Notice and Consent Forms, modified to comply with all terms of this order, including the modified class description, in a conspicuous place (such as in a break room or on a bulletin board) in all locations where members of the class are employed, within FIFTEEN DAYS of entry of this order;

IT IS FINALLY ORDERED that any potential plaintiff who wishes to join this action must return a Consent Form to Plaintiffs' counsel, who shall file the Consent Form with the Court within SEVENTY-FIVE DAYS of entry of this order, or otherwise not participate in this action.

SIGNED this the 8th day of May 2013.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE